UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONNY PARTIN,

       Plaintiff,                                        Hon. Janet T. Neff

v.                                                       Case No. 1:09-CV-368

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
       _____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for the payment of benefits**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 36 years of age at the time of the ALJ's decision. (Tr. 21-22). He possesses a General Equivalency Diploma (GED), attended "some" college classes, and worked previously as a postal clerk, truck driver, and Army mechanic. (Tr. 72-75, 652).

Plaintiff applied for benefits on February 6, 2006, alleging that he had been disabled since January 23, 2006, due to various impairments. (Tr. 67-69). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 23-66). On April 23, 2008, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff and vocational expert, Richard Riedl. (Tr. 645-700). In a written decision dated September 4, 2008, the ALJ determined that Plaintiff was not disabled. (Tr. 15-22). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-8). Plaintiff then initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision. Plaintiff was subsequently awarded Social Security disability benefits, pursuant to a separate application, effective September 5, 2008. (Dkt. #7). Furthermore, in a decision dated March 10, 2006, Plaintiff was found to be completed disabled by the Department of Veterans Affairs. (Tr. 112-21).

## RELEVANT MEDICAL HISTORY

On February 8, 2001, Plaintiff underwent left carpal tunnel release surgery performed by Dr. Larry Walton. (Tr. 175). Plaintiff is right hand dominant. (Tr. 216).

On October 15, 2001, Plaintiff was examined by Dr. Kenneth Highhouse. (Tr. 177-78). Plaintiff reported that he was experiencing pain in his right forearm and elbow and left shoulder. (Tr. 177). Plaintiff reported that he suffered several separations of his left shoulder while serving in the Army approximately 10 years ago. (Tr. 177). An examination of Plaintiff's right shoulder was unremarkable with "comfortable range of motion, good strength and stability." (Tr. 178). X-rays of Plaintiff's right elbow were negative, but examination revealed "probable lateral epicondylitis with severe symptoms." (Tr. 178). An examination of Plaintiff's left shoulder revealed "probable AC-joint impingement and arthrosis." (Tr. 178).

On October 27, 2002, Plaintiff participated in an MRI examination of his thoracic spine, the results of which revealed degenerative changes with "no compromise of the neural structures." (Tr. 279).

On January 17, 2003, Dr. John Walper performed decompression surgery on Plaintiff's left shoulder to treat impingement syndrome. (Tr. 179-80). On March 3, 2003, Plaintiff exhibited limited range of motion, but believed that his shoulder was "moving better." (Tr. 210). Dr. Walper indicated that Plaintiff "has had some symptomatic benefit from the decompression." (Tr. 210). The doctor concluded that Plaintiff "needs to really work on strengthening of the shoulder," but could return to work subject to the following restrictions: (1) no lifting over 15 pounds; and (2) no over the shoulder work. (Tr. 210).

On April 8, 2003, Plaintiff reported that "in some ways his shoulder has improved since his surgery and in some ways it is worse." (Tr. 210). Dr. Walper reported that Plaintiff's shoulder seemed to be most "bothersome" when in an abduction or overhead position. (Tr. 209).

On May 27, 2003, Plaintiff underwent left shoulder surgery to treat an "unstable acromioclavicular joint with anterior instability." (Tr. 181-82). On June 10, 2003, Plaintiff reported that he was again experiencing difficulty with his left shoulder. (Tr. 206). Specifically, Plaintiff reported that he had "a lot of problems buttoning his pants because of pain and pulling in the front of the shoulder." (Tr. 206). An August 29, 2003 examination of Plaintiff's left shoulder revealed limited range of motion and "persistent" pain. (Tr. 204).

X-rays of Plaintiff's cervical spine, taken on November 3, 2003, revealed "very mild" stenosis at C4-5 "with no other acute or chronic osseous abnormalities noted." (Tr. 201).

On January 2, 2004, Plaintiff underwent open distal clavicle excision surgery performed by Dr. Walper. (Tr. 183-84). On February 9, 2004, Plaintiff was examined by Dr. Walper. (Tr. 198-99). Plaintiff reported that he was experiencing "persistent problems" with his left shoulder. (Tr. 199). Plaintiff exhibited crepitus over the AC joint and limited range of motion. (Tr. 199). The doctor decided to "continue therapy for another month," but was "not really sure what else to offer" Plaintiff. (Tr. 198-99). A March 5, 2004 examination revealed that "abduction and forward flexion are still quite painful." (Tr. 198). Dr. Walper instructed Plaintiff that "this may very well be something he is going to have to live with." (Tr. 198).

On April 30, 2004, Plaintiff was examined by Dr. Walper. (Tr. 196). Plaintiff exhibited "difficulty with forward flexion and abduction" and impingement signs were "still positive." (Tr. 196). The doctor concluded, "I don't know really what else to offer him at this

5

point." (Tr. 196). Plaintiff was cleared to return to work subject to the following restrictions: (1) no lifting over 20 pounds; (2) "no push/pull or carry;" and (3) no over the shoulder work. (Tr. 196).

On August 17, 2004, Plaintiff was examined by Dr. Charles Guernsey. (Tr. 189-91). Plaintiff reported experiencing pain in his upper extremities, as well as his neck and lower back. (Tr. 189). Plaintiff exhibited limited range of motion in his left upper extremity and tenderness throughout his spine. (Tr. 190). The doctor concluded that Plaintiff was experiencing mechanical pain of the left shoulder and radiculitis of the cervical, thoracic, and lumbar spine. (Tr. 190).

On September 17, 2004, Plaintiff was examined by Dr. Walper. (Tr. 194). Plaintiff reported that he was experiencing problems with his right shoulder. (Tr. 194). An examination revealed that Plaintiff was suffering impingement syndrome of the right shoulder. (Tr. 194). On September 22, 2004, Plaintiff participated in an MRI examination of his right shoulder, the results of which revealed "findings consistent with chronic tendinosis," as well as "mild" joint space narrowing at the AC joint. (Tr. 220). A February 9, 2005 examination by Dr. Walper revealed that Plaintiff was suffering "persistent impingement" of the right shoulder and "continued left upper extremity issues," as well as "probable lateral epicondylitis of the right elbow." (Tr. 192-93).

On March 3, 2005, Plaintiff was examined by Dr. Arthur Riley. (Tr. 309-15). Plaintiff reported that he "has pain in his shoulder every minute of the day and it increases with use." (Tr. 312). An examination revealed tenderness over the AC joint and scapular pain. (Tr. 312). Shoulder movement produced "moderate to severe pain." (Tr. 312). Plaintiff was diagnosed with "left shoulder impingement syndrome, with no benefit from recent surgery." (Tr. 313).

On October 6, 2005, Plaintiff was examined by Dr. Robert Schaefer. (Tr. 226-28). X-rays of Plaintiff's left shoulder revealed "an adequate subacromial decompression and distal

6

clavicle excision without evidence of significant glenohumeral joint arthritis." (Tr. 229). Plaintiff was diagnosed with: (1) chronic pain syndrome of the left upper extremity; (2) mild to moderate impingement syndrome and rotator cuff tendinitis of the right shoulder; and (3) mild to moderate lateral epicondylitis of the right elbow. (Tr. 227). The doctor indicated that he could treat Plaintiff's right upper extremity with injections, but that he did not "have much to offer [Plaintiff] in terms of his left shoulder other than a recommendation to pursue a pain management program." (Tr. 227-28).

On December 19, 2005, Dr. Timothy Gatz, Plaintiff's long-time treating physician, authored a letter regarding Plaintiff's condition. (Tr. 336). The doctor reported that Plaintiff "cannot abduct on the left past 90 [degrees], he cannot lift greater than 5 pounds with the left arm even with holding something as simple as a pop can and cannot hold that for greater than one minute due to pain in the shoulder and back." (Tr. 336).

A January 17, 2006 examination of Plaintiff's left shoulder revealed "a lot of crepitus, some grinding and abnormal movement." (Tr. 537). The doctor also reported that Plaintiff experienced pain when moving his left arm. (Tr. 537).

On April 26, 2006, Plaintiff was examined by Dr. Elaine Kountanis. (Tr. 344-47). Plaintiff reported that his left shoulder "will continue to click and dislocate with minimal movement." (Tr. 344). Plaintiff rated the pain in his left shoulder as "5-10/10 all the time even with the narcotics he is taking." (Tr. 344). An examination of Plaintiff's left shoulder revealed "winging of the left scapula with atrophy of the left pectoral muscles; the left humeral head is clicking, movers forward excessively and is very painful." (Tr. 345). An examination of Plaintiff's right shoulder was unremarkable. (Tr. 345). The doctor noted that Plaintiff's "right arm is prone to overuse syndrome but is still strong." (Tr. 346).

7

Treatment notes dated September 20, 2006, indicate that Plaintiff was experiencing "markedly limited" range of motion in his left shoulder "with pain." (Tr. 508).

## ANALYSIS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffered from (1) left shoulder injury, (2) scapulothoracic arthritis, and (3) status post bilateral carpal tunnel release, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 17-19). The ALJ concluded that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 19-22). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

8

404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light[2] work subject to the following limitations: (1) he can lift, carry, push, and pull 10 pounds frequently and 20 pounds occasionally, but no more than 5 pounds with his left upper extremity; (2) he can stand/walk 6 hours during an 8-hour workday; (3) he can sit for 6 hours during an 8-hour workday; (4) he should not climb ladders, ropes, or scaffolds;

---

[2] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

(5) he can occasionally crawl and climb stairs; (6) he can frequently balance, stoop, kneel, and crouch; (7) he should not reach overhead with his left arm; and (8) he should avoid exposure to vibration. (Tr. 19).

The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Richard Riedl.

The vocational expert testified that there existed approximately 19,500 jobs in the lower peninsula of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 689-90). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).

I. The ALJ's Conclusion that there Exists a Significant Number of Jobs which Plaintiff can Perform Despite his Limitations is not Supported by Substantial Evidence

The ALJ found that Plaintiff retains the ability to perform light work subject to the limitations identified above. The ALJ further found that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. The ALJ, therefore, concluded that Plaintiff was not disabled. Plaintiff asserts that this conclusion is not supported by substantial evidence. The undersigned agrees.

The medical record detailed above reveals that Plaintiff's left shoulder impairment impairs him to an extent beyond that recognized by the ALJ. As previously noted, light work requires frequent lifting and carrying. While Plaintiff *may* be able to use his left upper extremity to lift five pounds on a single occasion, the record simply does not support the conclusion that Plaintiff can frequently use his left upper extremity to lift and/or carry five pounds, or that he can utilize his left upper extremity on a sustained basis to perform other work-related activities. In this respect, the Court notes that Dr. Walper concluded that Plaintiff was unable to push, pull, or carry any amounts with his left upper extremity. (Tr. 196). Plaintiff has also long been prescribed pain medication consistent with his subjective allegations of pain and disability and inconsistent with the ALJ's RFC determination: Vicodin, MS Contin, Morphine, and Hydrocodone. The Court notes that the record contains no evidence that Plaintiff ever abused his medication or engaged in improper drug-seeking behavior. Finally, the ALJ determined that Plaintiff can occasionally crawl. The Court wonders how Plaintiff could ever crawl given the extent and severity of the damage to his left upper extremity. In sum, the record does not contain substantial evidence supporting the ALJ's RFC determination.

The vocational expert testified that given Plaintiff's RFC, there existed a significant number of jobs which Plaintiff could perform despite such limitations. However, the ALJ's RFC determination is not supported by substantial evidence. Because the vocational expert's testimony was premised upon a faulty RFC determination, the ALJ's reliance thereon does not constitute substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments).

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). In light of the evidence of record detailed above, as well as the determination by the Department of Veterans Affairs that Plaintiff is 100 percent disabled, the Court finds that there exists compelling evidence that Plaintiff is disabled. Remanding this matter for further administrative action would constitute a waste of scarce agency resources.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. The undersigned further concludes that the evidence of Plaintiff's disability is compelling. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for payment of benefits**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: July 27, 2010

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge